The next case today is Hector M. Jenkins v. the Boston Housing Court, Appeal No. 20-1124. Attorney Shapiro, please introduce yourself on the record. I'm Robert Shapiro. I represent the Plaintiff Appellant Hector Jenkins. May it please the Court, may I reserve two minutes for rebuttal, Your Honor? Yes, you may. I represent Mr. Jenkins, who served as a Boston Housing Court mediator for over 22 years before he was terminated in 2016. Mr. Jenkins seeks reversal of three trial court rulings and the dismissal of his Title VII claims brought in this case. First, Mr. Jenkins' Title VII retaliation claim should not have been dismissed on summary judgment as he stated a prima facie claim and also presented evidence that rebutted defendants' proffered non-retaliatory reason for his termination. On the prima facie case, a defendant insists that Jenkins wrote and sent too many email complaints and related grievances to persons up and down the trial court hierarchy, especially after he was placed on leave in the spring of 2015 and forced to undergo a mental health evaluation. His complaints continued through a June 16, 2016, email that he sent to the defendant's decision-maker, Mr. Burke. Jenkins complained about racially motivated mistreatment of him and others in the housing court, other employees, and litigants as well. His supervisors complained to him about his complaining and asked him to stop. As Jenkins testified, his supervisor, Mr. Neville, the chief housing specialist, would shout at Jenkins, we don't want you here, and told Jenkins that he should complain to his boy, Obama, if he wanted to. Despite this claim, the defendants claim that Mr. Burke and Judge Sullivan, who were the decision-makers, were somehow not unaware of Jenkins' complaints, despite the allegation that he complained incessantly. The defendant writes, apparently with a straight face, in their brief, that there is no evidence that Burke ever read the letter attached to the June 16 email to him. They present no affidavit testimony from Mr. Burke or Judge Sullivan to support this lawyer denial that, yes, they received the email, but they didn't read it. Thus, the only reasonable inference is that recipients of emails read, especially when they're decision-makers for a defendant and they're on the topic on which they're making decisions, that they read and are aware of the emails and their content. The district court had found that the second amended complaint had pleaded sufficient facts to state a claim for retaliation. On summary judgment, Jenkins presented all those facts. In fact, the second amended complaint is a verified complaint, so that he definitely, by the court's earlier reasoning, had to establish a prima facie claim for his Title VII retaliation claim. On the issue of pretext, the defendants contend that they fired Jenkins not in retaliation, but because his voluminous email complaints and the failure to heed warnings to stop them amounted to insubordination. Mr. Counsel, the district court makes the point in its decision that months before your client submitted the letter in which he complains about racial discrimination in the housing court, that the disciplinary process was already underway. I think they're making the point that that sequence belies any suggestion that discipline that took place after that letter was submitted had anything to do with that letter. The process was already underway for what they characterize as a long history of insubordination, failure to comply with internal rules. How do you respond to that assertion, which I think was very important in the district court's analysis as to the causal relationship between that letter and the discipline that was finally taken? Their point, again, the discipline was already well underway. The discipline that was meted out at the end of the process was a termination, and the question is, was that termination in retaliation for complaints or was that termination for insubordination? Here, the proffered reason insubordination is precisely what he claims his protected activity was, which is repeated complaints about issues that he observed. The disciplinary process only commenced because of his complaints. The defendant separates the issue. They say Mr. Burke may not have known about it until June of 2016 because that's the letter that's close in proximity to termination. We'd already started the termination, but if they want to go back and say they started the termination process earlier than that, they still started it based on other complaints and the record is right. That's the way I understand it. You're saying that the letter, I forget the date of the letter, the June... June 16, 2016. Actually, there were many earlier instances where your client complained of racially discriminatory policies in the housing court, and so even those earlier disciplinary initiatives were in response to earlier instances of protected conduct of his. Is that your argument? Yes, that's true. They say the reason the disciplinary process kept elevating, first it was leave, then it was a second leave, was because he refused to stop making the complaints. He says, I refused to stop making the complaints because I was asking for some action to be taken on them. We believe that in this court's retaliation cases say that it becomes an issue for the jury, not for a court, to decide whether that's retaliatory animus based on those complaints. Mr. Jenkins was accused of crying wolf and Mr. Jenkins rebuts that cry because they said the housing court's big point is that his complaints were irrational of a raving lunatic and he wouldn't stop and he had a fixation and he rebuts that and says, no, my complaints were real. In fact, I observed these things, this is what my supervisor said to me, and then we have also in the record the lawyers committee did an independent investigation of the trial court's practices in relation to race and other discriminatory practices. I have two questions and I know your time's short, but one is I had thought there was a separate strain of justification for the termination, which was not tied to the mere fact that complaints were made, but the way the complaints were made. Well, it was the way. How do you respond to that because I think what you have to show is that there is a tribal issue of fact as to the claim that the style of complaint that he was making was such that it was justifiable to terminate him was pretextual. And we believe the record does show that because while they say that while there's some tiny bit of evidence that they present that some of their recipients of complaints were concerned, etc. As in the case of McDonough versus the city of Quincy, here they acknowledge that his complaints were writing emails and the reason they say it's in subordination is they told them to stop sending emails. And so the question is if it's protected activity, he should be entitled to continue to send emails. One other question, which is not the retaliation issue, but the hostile workplace claim, which is a question about exhaustion. And I just want to understand the theory of how it's exhausted. I know the First Amendment complaint was attached to, I think, the first charge as well as the second charge, but I'll just tell you the difficulty I'd like you to address. The second charge is an ADA claim to the EEOC. So it's not entirely obvious to me how attaching the First Amendment complaint to an ADA charge can exhaust, impliedly, the racial hostile workplace environment Title VII claim. And I assume you're not making that argument. The argument is that it was attached to the first. So the first one, I guess the question is, how do you, I didn't totally grasp how you want us to understand how that exhaustion claim goes. Because merely filing a complaint that you filed in court with the EEOC does not exhaust the claims in the complaint. So I assume your argument is something about the attachment of that First Amendment complaint with the charge, even though the charge does not itself describe a hostile workplace environment. Title VII claim to the EEOC somehow creates exhaustion of the hostile workplace claim. So could you just tell me how that works and what case I'm supposed to rely on to support that? The issue of exhaustion is that, the question is, when the EEOC issues its right to sue letter based on the charge, whether it was reasonably aware of that claim, of a claim that it was dismissing. And the argument was that the charge only had the time barred claims and therefore it wasn't aware. But the fact that he attached the First Amendment complaint put the EEOC on notice that he was making a hostile. I believe the argument is that the first EEOC complaint did not set forth any theory of hostile environment, nor did it seek relief on that. And it has nothing to do with whether the claims were time barred or not. And you say, well, we also submitted, I don't know if it was at the same time or later, a copy of our First Amendment amended complaint, which mentions hostile environment. But again, it doesn't seem to do any more than that. And so the district court felt that wasn't really sufficient to present the claim to the EEOC and meet your exhaustion requirement. And I'm going to assume, contrary to the state, that you did file the First Amendment amended complaint. Although it's actually quite commonplace in a federal court litigation for you to file a copy in the district court of what you actually filed with the EEOC. And I believe you didn't do that. All we have is your allegation. Your Honor is correct. And the claim that was time barred was not a hostile environment claim. My argument is that as a pro se complainant, and you're right, there's an issue of fact as to whether he did attach the complaint because he did not file the First Amendment complaint attached to the charge he filed in the district court. But our position is that if they got the First Amendment complaint and that Judge Sarris did find the First Amendment complaint contained the claim for hostile environment, then reading why the EEOC would have to have read the First Amendment complaint and seen that charge as well. And therefore, it's right to sue letter. Well, that's what I want to ask you. What is that? What is the authority you would like us to rely on for the idea that the actual charge was a retaliation claim and a disparate treatment claim? The First Amendment complaint made a hostile environment claim. The charge was disparate treatment and the time barred claim was that from the hiring of the chief housing specialist. So the question is what case law suggests that the right way to understand it when you attach that First Amendment complaint is not that First Amendment flushes out allegations relevant to the claims in the charge, but also puts the EEOC on notice of a new Title 7 claim altogether. And I just just if you could give me some sense of how that works, because we do have quite clear case law that just putting before the EEOC a complaint that you filed in court does not exhaust every claim in that complaint. So you must be saying somehow by putting forth the claims that are different than the hostile workplace claim to the EEOC, that somehow gets you enough in the ballpark that they're supposed to look for other Title 7 claims in the complaint. And if there's just authority that supports that or what that theory is, I'm not quite following. Well, what my my argument, I believe, is that is that when you attach the First Amendment complaint to the charge, that's part of the charge that there's no reason to not to to draw the line. It's a pro se charge and the complainant is telling the EEOC, here's my complaint. So I have on the first page, I've outlaid this charge and then I'm attaching this First Amendment complaint that lists through my charges. Now, you know, he had brought the First Amendment complaint in in the district court before he went, you know, before he went to the EEOC. So he it was just a short rather than rewriting the charge. That's my argument. And the the the final thing and then I know my time is way up is is is the the amendment to the disability claim, which is neither. Your time is up. We'll rely on your brief, and I believe you asked for two minutes of rebuttal. OK, we'll hear from your opponent now. Thank you, Mr. Shapiro. Please mute your device at this time. Attorney Sandals, please introduce yourself on the record. You have 10 minutes. May it please the court. Michelle Sandals on behalf of the Housing Court Department. I'd like to first address the summary judgment on the retaliation claim. So first, plaintiff cannot survive summary judgment on his retaliation claim because he has failed to establish a prima facie case of retaliation. And in particular, he has failed to establish that that his June 16th letter, which is the protected conduct at issue in this case, was the but-for cause of his July 2016 termination, which is the only adverse employment action at issue in this case. And absent absent establishing that but-for causation, Mr. Jenkins cannot survive summary judgment. If we accepted his argument that the earlier protected conduct he's also relying on for the prima facie case, we would then come to the question of was there a legitimate non-discriminatory reason, which I take it you say is the way he complained. And then Mr. Shapiro says, well, that that's a question of fact as to whether that's a pretextual argument. Could you address that point? Yes, Judge Barron. So if we if we were to move on to pretext, it is not Mr. Jenkins, the content of Mr. Jenkins complaints or the fact that he complains that led to his termination, but instead his his course of conduct, his insubordination. So Mr. Jenkins was on multiple occasions told of ways that he could complain or lodge his complaints in. I understand that. But for the pretext point, he says there's a fact question for the jury on that. Either you're right that the reason they fired him was because of the way he acted or the way he complained or you're wrong. So how do we what's your answer to that point that there is a disputed question of fact on that question? What does the record show about what reason the employer gave for firing him? And why do you think there's no factual dispute as to whether that reason is pretextual? So at this stage, your honor, it is Mr. Jenkins burden. Once once the housing court has put forth its its reason, it is Mr. Jenkins burden to set forth specific facts from which a reasonable fact finder. Where do I find the where do I find evidence of the reason that they gave? Oh, so that would be in the July 2016 letter following the disciplinary hearing. So I mean, and that letter is fairly clear in saying that it was insubordination is the reason. Yes, your honor. And that that is at page four fifty five of the record and sets forth all of the all of the reasons for Mr. Jenkins termination, including insubordination and misconduct. And so at that stage, it becomes Mr. Jenkins burden to set forth specific facts showing that that that that stated reason is a sham and a pretext for retaliatory animus. And he has not done so. What he said is that he disagrees with the reason or that it's open to multiple interpretations. But at this stage, that's that's insufficient. He must point to specific facts and he and he hasn't he hasn't shown any from which a reasonable fact finder could conclude that that reason is retaliation. And to the contrary, the overwhelming record evidence demonstrates that that Mr. Jenkins for months was sending emails to housing court judges, to administrators, to HR personnel, accusing them of of criminal corruption and abuse of process even after he was told to stop. And he was told of ways that he could lodge his complaints in more appropriate and a more appropriate manner, including by sending complaints to a supervisor, his supervisor, supervisor, or if he didn't feel comfortable doing that, sending complaints to to HR. And he always had his union rep who he could send a grievance to. And he chose not to not to follow any of those procedures, but to continue sending repeated emails to to anybody and everybody at the trial court. Counsel, he says that for years he's been complaining about racially discriminatory policies at the agency. He complained about the way in which he was bypassed for a position that he wanted in favor of Mr. Neville, which he says is just one glaring example of the kind of racial animus that he experienced over over many years. And he and he in his deposition. And there's, I guess, other evidence of this. This has been going on for years. And this is what he was trying to draw the attention of the responsible officials at the housing court. In terms of whether this was an attempt to avoid dealing with those racially discriminatory allegations or whether this was all about the way in which he made his complaints and the need to end insubordination. Does that long history that he cites, does that just go away in deciding whether there's really a factual issue for a jury here? I mean, that's really what he's what he's saying is, yeah, I'm a nuisance. I complain all the time about racial animus and they want to get rid of me. And they finally found a way to do it. Does all that history just go away in deciding whether there's a jury issue here? So the so the history of the of the complaints in 2015 and earlier would not help Mr. Jenkins establish retaliation in this case, because those complaints are are to removed. And when we and then it's remaining four minutes and then looking looking at whether that would come into the pretext analysis again, those are not those are not facts showing that the housing court stated reason that insubordination were pretext for retaliation or were a sham. And in fact, the housing court did not ignore those complaints or or fail to take them seriously. When Mr. Jenkins returned from administrative leave in 2015, the housing court appointed an investigator to look into those complaints and found that they were they were largely unfounded. And part of the insubordination that led to Mr. Jenkins termination was his refusal to to comply with, you know, coming to meetings to hear the findings of that investigation. Before we run out of time, I'd like you to address Judge Sarris's holding that the hostile environment claim had not been properly exhausted. Yes, Judge Lynch. So so Judge Sarris correctly held that that that the hostile work environment claim had not been had not been exhausted. So Mr. Jenkins claimed at the district court that the first that he attached the first amended complaint to the disability EEOC charge and now claims he attached it to his earlier EEOC charge. But even if he had done that and even if that first amended complaint did did state a hostile work environment claim attaching that that first amended complaint would not have put the district court put the EEOC on notice to investigate a hostile work environment claim. It's a prerequisite to filing a district court litigation to get a right to sue letter from the EEOC and the EEOC would therefore have no reason to investigate a claim that is the subject of pending litigation. And if there are no further questions, maybe I don't know, I said that just the worthy. The first amendment complaint also included some of the claims that the were in the first EEOC charge, didn't it? It included so the first EEOC charge was, excuse me, the first EEOC charge included a two paragraphs on the 2004 failure to promote, which was time barred and won a single sentence on retaliation. Some of the claims in the first EEOC charge also were in the first amendment complaint, correct? I believe that's correct. So it would be implausible to think that anything in the first amendment complaint was something that the EEOC should look at. Obviously, there was overlap between the two. So given it's a pro se complainant and given our case law talking about investigating the claim, would you come across it? Why isn't there some sense here in saying you have a pro se complainant, he's put up charges of Title VII race discrimination, then he's attached this complaint, which overlaps with it and then flushes it out and describes conduct that they're going to see when they get into the guts of his Title VII. I mean, how strict is the EEOC exhaustion requirement with respect to a pro se complainant? I thought our language was relatively flexible on that point. In terms of putting the EEOC on notice instead of being subject to formal technicalities of pleading. So Judge Barron, I'll just say that even if that's the case, the first EEOC charge did not include facts that would put the EEOC on notice of a hostile work environment claim. And neither did the first amended complaint, which I think did not state a claim for a hostile work environment. And there would be no reason for the EEOC, based on the text of the EEOC charge, even if the first amended complaint were included, to investigate that hostile work environment claim, pro se litigant or not.  Thank you, Your Honors. Thank you. Thank you. Would Attorney Sandals please mute? Thank you. And Attorney Shapiro, please reintroduce yourself for the record. Robert Shapiro for Appellant on rebuttal. To Judge Barron's question, I found the sites in Thornton v. United Parcel Service, where this court said the scope of the investigation rule permits a district court to look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation. And also Powers v. Grinnell, where the court discussed the purpose of administrative exhaustion is to put the EEOC and the employer on notice of the claim. And so here, by filing the first amendment complaint, he would have been on notice of the claim. I'm sorry. I have difficulty with the proposition that you file something that's called an EEOC complaint. You then file another document. You do not say to the agency, I am amending the complaint. He has it open to him to amend the complaint. And I don't know of any court that says that constitutes an amendment to the complaint. So let's go back to the question of whether the EEOC would inevitably investigate the new claim of hostile work environment. They wouldn't have done it without the 2004 failure to promote. So what was the other claim? Disparate treatment? Your Honor, just to be clear, I believe the first charge and the first amendment complaint were all filed on December 21st at the same time. So it's a single document. I'm sorry. He chose to label one thing and he chose to put in something else. You're saying, oh, he ought to be excused from making the harassment complaint explicit in the EEOC filing because, after all, we don't want pro ses to have to copy more than they should. That was the argument you made to us. That that that is that is correct. And I thought you just were making another argument that Judge Lynch's question I think gets to that. Which is that potentially one of the claims in the EEOC charge itself was of sufficient breadth or of a nature that would lead the EEOC to encounter the substantial evidence in this case or substantial allegations in this case of a hostile workplace environment. That's hard to see how that could be true of the 2004 claim in the charge. So there is another claim in that charge. What is it? Describe its parameters and explain how that one might have led the EEOC inevitably or probably to run into these allegations. Well, it implied in the charge is also this disparate treatment that that that that employees of color are not being treated the same as as white employees. And he I think the the Mr. Jenkins thought by putting in the 2004 charge, he was using that as an example. And so the examples in the First Amendment complaint, if they looked at those to show further examples of that, that would have led to that. Yes, I believe it. And I just want to quickly. I'm sorry, was the claim that all black employees were being subjected to a harassing work environment? I thought the first claim was about differential treatment between blacks and whites. OK, I don't know how you get from that to I personally have been subjected to a harassing work environment. Because the evidence of disparate treatment includes harassment, includes harass, includes the the statements made to him of disparate treatment that based on race that create a hostile environment. Yes. But was there any assertion that anybody else who happened who was African-American or non-white was being subjected to a harassing work environment? I did not see that in the First Amendment complaint, even in there, if it's even read to state a claim. Well, we would argue otherwise he the complaint has to do with not only other employees, but litigants being subjected to it. And I just want to the lawyers committee reports that, you know, whether this goes back to the first claim, whether he's he's shown a pretext that he's justified. He didn't write this, but the lawyers committee report says that that employees of the trial court report being subject to racial slurs and demeaning comments. Employees also said the reports of race based incidents often went uninvestigated, that employees of color were relegated to more menial work and the minorities received disparately severe discipline compared to white peers. Those were the complaints he was making over and over and over again, and that was the disparate treatment both in the other claim, but it also goes to retaliation to show that his complaints were legitimate and a trier of fact could determine the method of complaining. This isn't a case where they say he pulled a knife on someone or threatened people's safety. He wrote too many emails. Was the retaliation claim referenced in the EEOC charge? They found that was found to be exhausted. Yes. But that was not referenced specifically in the charge, correct? He didn't. I don't think he used the word retaliation. So, I mean, in a way that that's, I think, somewhat supportive of your idea that if you could find the retaliation claim embedded in there, how could you not find the hostile workplace when the retaliation claim depends on the hostile workplace? That is true. I thank you, Ron. OK, thank you very much. Any further questions from the panel? No, no. Thank you. Thank you, Mr. Shapiro, and thank you, Attorney Sandals. Please, you may leave the meeting at this time.